653 A.2d 541

**Kenneth GOODWICH**

v.

**The SINAI HOSPITAL OF BALTIMORE, INC.**

No. 797, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Feb. 9, 1995.

Reconsideration Denied March 6, 1995.

342

Angus R. Everton (Roy L. Mason and Mason, Ketterman & Morgan, on the brief), Baltimore, for appellant.

Michael J. Baxter (John R. Penhallegon and Smith, Somerville & Case, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and CATHELL and HOLLANDER, JJ.

WILNER, Chief Judge.

Kenneth Goodwich sued Sinai Hospital in the Circuit Court for Baltimore City because the hospital placed certain restrictions on his privilege to practice medicine at the hospital. The court granted summary judgment in favor of the hospital on the ground that it enjoyed statutory immunity. Dr. Goodwich believes the court erred.

Dr. Goodwich is a licensed physician who specializes in obstetrics and gynecology but is not board certified in that

specialty.[1]  In the mid–1970's, he was an intern and resident at Sinai; he joined the medical staff as an assistant attending physician in 1978.  According to Sinai, Dr. Goodwich's "clinical practice patterns were subject to question by his peers on a wide variety of medical matters over the years."  In 1988, the Chairman of the Obstetrics and Gynecology Department, Dr. Phillip Goldstein, met with Dr. Goodwich on several occasions regarding those concerns and suggested to him that he obtain second opinions from board certified obstetricians and gynecologists (OB/GYNs) for all high-risk obstetrical patients.  Dr. Goodwich orally agreed.

That agreement was memorialized in two letters, one dated June 29, 1988 from Dr. Goldstein to Dr. Goodwich and one dated August 12, 1988 from Dr. Goodwich to Dr. Goldstein. Although Dr. Goodwich now claims that he was initially misled into thinking that the "second opinion" rule was applicable to all non-board certified OB/GYNs, there is nothing in the exchange of letters to so indicate.  Dr. Goldstein, after noting one incident of a pre-eclamptic patient admitted to the obstetrical service without a senior consultation, suggested that it would be prudent, in the current litigious atmosphere, to have such a consultation for high-risk patients, and that it made sense to select a board certified OB/GYN to support Dr. Goodwich's therapeutic goals in the management of such patients.  Dr. Goodwich responded that he agreed with that recommendation with respect to high-risk obstetrical patients.

Unfortunately, Dr. Goodwich failed to comply faithfully with his agreement.  As a result, a second meeting took place in February, 1990, this time between Dr. Goldstein and Dr. Goodwich's attorney.  At that meeting, the parties agreed that Dr. Goodwich would obtain second opinions from board certified OB/GYNs on "all of his high-risk patients."  That agreement, which does not appear to have been restricted to obstetrical patients, was memorialized in a letter from the attorney to Dr. Goldstein dated February 26, 1990.

---

1.  It was not a requirement at Sinai for members of the OB–GYN department to be board certified.

Due to continued noncompliance with the second opinion agreement and "more instances of questionable patient care," Dr. Goldstein requested the Director of Quality, Risk & Utilization Management at Sinai to investigate how often Dr. Goodwich failed to obtain second opinions. The investigation uncovered several instances of noncompliance as well as problems with Dr. Goodwich's management of various patients. Dr. Goldstein met with Dr. Goodwich again to discuss those matters. Dr. Goodwich, for a third time, agreed to obtain second opinions in high-risk obstetrical cases. Dr. Goldstein confirmed that agreement in a letter to Dr. Goodwich dated April 23, 1992. In that letter, Dr. Goldstein made clear what he thought had been clear from the beginning—that the second opinion must be in writing and posted in the patient's chart prior to surgery.

In June, 1992, after Dr. Goldstein left Sinai, Dr. W. Scott Taylor became acting Chief of the Obstetrics and Gynecology Department. In December, Dr. Taylor requested the Director of Quality, Risk & Utilization Management at Sinai to re-check Dr. Goodwich's compliance with the second opinion agreement.

By January, Sinai had appointed Dr. John L. Currie as Chief of the Obstetrics and Gynecology Department. On January 27, in response to Dr. Taylor's request, the Quality Assurance Committee reported to Dr. Currie that Dr. Goodwich had failed to obtain second opinions in 14 cases since his agreement with Dr. Goldstein in April, 1992. On January 28, Dr. Currie met with Dr. Goodwich and, again, Dr. Goodwich agreed to obtain second opinions on certain categories of high-risk obstetrical and gynecological cases. That same day, Dr. Currie sent a confirmation letter of the agreement to Dr. Goodwich requesting that he sign it. Dr. Goodwich did not sign the letter. On February 2, Dr. Currie met with Dr. Goodwich and his attorney. Again, Dr. Goodwich orally agreed to obtain second opinions, but no written agreement was signed.

In his January 28 letter, Dr. Currie informed·Dr. Goodwich that his privileges had been extended to March 31, 1993 but that, "[i]n order to renew your privileges, I am requiring that you obtain written second opinions and direct supervision by Board certified obstetricians and gynecologists for the following OB/GYN procedures:

> "*Obstetrical:* Operative vaginal deliveries (i.e. forceps, vacuum extraction)
>
> Management of fetal distress
>
> Cesarean deliveries
>
> Breech deliveries
>
> Disorders of pregnancy such as pre-eclampsia, etc.
>
> *Gynecological:* All major abdominal procedures
>
> Vaginal hysterectomy
>
> Laparoscopy (i.e., when any surgical procedure other than visual diagnosis occurs)"

Dr. Currie warned that failure to obtain a second opinion and supervision "for all such cases at Sinai Hospital prior to March 31, 1993" would result in "further action against your privileges."

According to Sinai, Dr. Goodwich's continuing failure to obtain second opinions and some additional instances of questionable patient care prompted the hospital to abridge his privileges temporarily by making the obtention of second opinions in the categories of cases enumerated in the January 28 letter a mandatory condition of his privilege to practice medicine at Sinai. On February 26, 1993, Dr. Currie informed Dr. Goodwich in writing that, pursuant to Article IV, § 7C of the By–Laws, Rules, and Regulations of the Hospital's Medical Staff, his privileges were "temporarily abridged" in precisely the manner set forth in the January 28 letter.[2] The

---

**2.** The abridgement, suspension, and termination of privileges is dealt with in Article IV, § 7 of the By–Laws. Section 7.C.6 provides that:

notice also advised Dr. Goodwich that the Medical Executive Committee (MEC) would consider a permanent abridgement of his privileges on March 8 and informed him of the time and location of the meeting. Prior to the meeting, all interested parties were provided access to the list of specific patient cases under consideration and to all departmental files.

At the meeting on March 8, Dr. Currie discussed the abridgement and the reasons for it. Dr. Goodwich was permitted to make a statement on his own behalf and to answer questions from the MEC members. At the conclusion of the meeting, the MEC, after an hour-and-a-half deliberation, decided to abridge Dr. Goodwich's privileges for three months on the same terms as the temporary abridgement. The outcome of the meeting was reported to the Maryland State Board of Physician Quality Assurance and the National Practitioner Data Bank.

Subsequent to the meeting, Dr. Goodwich requested and received an evidentiary hearing before a three-physician panel to consider the reasonableness and necessity of the abridgement. Thereafter, Dr. Goodwich requested and received an administrative hearing before another three-physician panel. Both panels, as well as the hospital's Board of Trustees in a subsequent meeting, affirmed the MEC's decision.

During the above administrative appellate process, Dr. Goodwich sued Sinai and the MEC in the Circuit Court for Baltimore City for civil conspiracy, denial of procedural due process, breach of contract, intentional interference with contractual relations, and tortious interference with prospective economic benefit.[3] On May 12, the conspiracy and due pro-

---

"In instances where, in the opinion of the Chief, the Chairman of the Medical Executive Committee, and the Chief Executive Officer of The Hospital, the welfare of a patient may be seriously affected absent abridgement of a member's privileges, the privileges of a member may be temporarily abridged until permanent abridgement procedures can be concluded."

3. On May 12, 1993 a Stipulation of Dismissal was filed dismissing the MEC from the action.

cess counts were dismissed. On January 13, 1994, Sinai filed a motion for summary judgment as to all remaining counts, claiming immunity under both Federal and State law. At a subsequent hearing, the motion was granted. On appeal, appellant contends that the court erred in granting summary judgment because there were genuine disputes of fact as to both Federal and State immunity and asks us to reverse the order. Finding no error with the court's decision, we decline to do so.

## I. *Federal Immunity.*

The Health Care Quality Improvement Act of 1986 (HCQIA) was enacted in response to "[t]he increasing occurrence of medical malpractice and the need to improve the quality of medical care." 42 U.S.C. § 11101. The purpose of HCQIA is to "provide for effective peer review and interstate monitoring of incompetent physicians and to grant qualified immunity from damages for those who participate in peer review activities." *Austin v. McNamara,* 979 F.2d 728, 733 (9th Cir.1992). Thus, the statute provides that a professional review body is not liable for damages if the review action of that body was taken:

"(1) in the reasonable belief that the action was in the furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3)."

42 U.S.C. § 11112(a).

Section 11112(a) further provides:

"A professional review action shall be presumed to have met the preceding standards necessary for the protection set out

in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence."

■ The legislative history of the HCQIA indicates that the reasonableness requirement in the preceding standards was intended to be an objective standard. The House Report on § 11112(a) stated:

"Initially, the Committee considered a 'good faith' standard for professional review actions. In response to concerns that 'good faith' might be misinterpreted as requiring only a test of the subjective state of mind of the physicians conducting the professional review action, the Committee changed to a more objective 'reasonable belief' standard."

*Austin,* 979 F.2d at 734 (quoting H.R.Rep. No. 903, 99th Cong.2d Sess. 10).

Dr. Goodwich argues that Sinai's actions did not satisfy paragraphs 1, 2, and 4 of § 11112(a) and that, therefore, the court erred in granting summary judgment.[4] The *Austin* court noted that

"[t]he rebuttable presumption of § 11112(a) creates a somewhat unusual standard: Might a reasonable jury, viewing the facts in the best light for [Dr. Goodwich], conclude that he has shown, by a preponderance of the evidence, that [Sinai's] actions are outside the scope of § 11112(a)?"

*Id.* at 734.

■ Thus, it was incumbent upon Dr. Goodwich to submit enough evidence to permit a jury to conclude that at least one of the four elements in § 11112(a) was not satisfied.

■ With regard to the first element, Dr. Goodwich argues that Sinai's actions were not in furtherance of quality health

---

4. Dr. Goodwich also argues that Sinai improperly failed to report Dr. Goldstein's actions in securing his agreement to obtain second opinions. Because that argument was not raised below, it is not preserved for our review. Md.Rule 8–131(a). Even if it were preserved, Dr. Goldstein merely obtained a voluntary agreement from Dr. Goodwich that he would obtain second opinions. Dr. Goodwich presents no evidence that Dr. Goldstein's recommendations constituted peer review actions requiring reporting.

care but were "motivated by a combination of personal feelings toward [him] and a misplaced concern about potential embarrassment in litigation." We find no merit to that argument, as the record is replete with documentation of questionable patient management and continual failure to comply with the second opinion agreement. There is also evidence that five medical malpractice cases had been filed against Dr. Goodwich, although, at the time, none of them had been resolved.

Apart from that evidence, *Austin* makes clear that personal feelings are irrelevant to the issue of immunity. "The test is an objective one, so bad faith is immaterial." *Id.* The issue is not whether Dr. Goldstein or any other physician at Sinai acted with animus toward Dr. Goodwich but whether another hospital, reviewing Dr. Goodwich's files under the circumstances of this case, would have abridged his privileges. Because under the statute Sinai is presumed to have acted reasonably, it was incumbent upon Dr. Goodwich to present evidence that another hospital would not have acted as Sinai did. He failed to present such evidence.

With regard to the second element, Dr. Goodwich argues that Sinai did not make reasonable efforts to obtain facts in the matter but merely rubber-stamped Dr. Goldstein's recommendations. First, the record indicates that Dr. Goodwich's clinical practice patterns were the subject of criticism for years; that due to those Dr. Goldstein requested that Dr. Goodwich obtain second opinions; that failure to obtain second opinions and additional instances of questionable patient care led Dr. Goldstein to request the Director of Quality, Risk & Utilization Management at Sinai to investigate Dr. Goodwich's file regarding patient care; and that Dr. Taylor and Dr. Currie made additional investigations into Dr. Goodwich's patient practices. Also, at the March 8 meeting, the MEC questioned Dr. Goodwich and allowed him the opportunity to refute the allegations presented and to present any information he had. He also was afforded a full evidentiary hearing in which extensive examinations took place. There is consid-

erable documentation in the record reporting questionable patient care and violations of the second opinion agreement. Dr. Goodwich presents no evidence, absent his own bare allegations, that a reasonable effort was not made to obtain the facts. *See Beatty v. Trailmaster*, 330 Md. 726, 737–739, 625 A.2d 1005 (1993) (mere general allegations are not enough to withstand a motion for summary judgment); *Clea v. City of Baltimore*, 312 Md. 662, 678, 541 A.2d 1303 (1988) (although the court must resolve all inferences in favor of the nonmoving party, "[t]hose inferences … must be *reasonable* ones").

█ Appellant next argues that Sinai did not meet the fourth condition of § 11112(a) because its review action was not taken in the reasonable belief that the action was warranted by the facts. Again, the record is replete with evidence to the contrary. As Sinai points out, the review action "did no more than force Dr. Goodwich to comply with an agreement he had voluntarily assumed on numerous occasions over a four-year period." His repeated refusal voluntarily to obtain second opinions warranted making that condition mandatory. Again, the only evidence offered to rebut the presumption that Sinai's actions were reasonable was Dr. Goodwich's own self-serving allegations.

Dr. Goodwich has not offered sufficient evidence to permit a trier of fact reasonably to conclude, by a preponderance of the evidence, that Sinai's actions were outside the scope of § 11112(a). We therefore conclude that the court did not err in granting its motion for summary judgment on the basis of Federal immunity.

## II. *State Immunity.*

Dr. Goodwich argues that, as a matter of law, Sinai is not entitled to immunity under Md.Code, Health Occ. art., §§ 14–501(f) and 14–504(c), and Md.Code, Cts. & Jud.Proc. art., § 5–393.

Section 14–501(f) provides:

"A person shall have the immunity from liability described under § 5–393 of the Courts and Judicial Proceedings Arti-

cle for any action as a member of the medical review committee or for giving information to, participating in, or contributing to the function of the medical review committee."

Section 14–504(c) provides:

"A person described in subsection (b) of this section shall have the immunity described under § 5–394 of the Courts and Judicial Proceedings Article for giving information to any hospital, hospital medical staff, related institution, or other health care facility, alternative health system, professional society, medical school, or professional licensing board."

Section 5–393(b) provides:

"A person who acts in good faith and within the scope of the jurisdiction of a medical review committee is not civilly liable for any action as a member of the medical review committee or for giving information to, participating in, or contributing to the function of the medical review committee."

Having found that Sinai is immune from damages under Federal law, 42 U.S.C. § 11112(a), it is unnecessary for us to discuss the merits of the State immunity argument. We do note, however, two aspects of the interrelation between the State and Federal laws. First, Md.Code, Health Occ. art., § 14–502 provides that, in accordance with the HCQIA, "the State elects not to be governed by the provisions of the Act that provide limitations on damages for suits brought under State law against medical review bodies and to physicians participating in professional peer review activities" but instead "shall be governed by this title." That "opt-out" provision was once allowed by § 11111(c)(2)(B) of HCQIA. In 1989, however, Congress deleted the opt-out provision from the statute. Thus, Md.Code, Health Occ art., § 14–502 is no longer effective. The Federal Act applies in Maryland and necessarily supersedes inconsistent State law.

Second, the standard under the Maryland statute is different from that under Federal law. Maryland law requires that a member of a review committee act in good faith, whereas Federal law, as noted, provides objective standards of reasonableness. Although the State law may thus appear to be inconsistent with the Federal law in that regard, it is not necessarily so. 42 U.S.C. § 11115(a) provides that

"nothing in this subchapter shall be construed as changing the liabilities or immunities under law or as preempting or overriding any State law which provides incentives, immunities, or protection for those engaged in a professional review action *that is in addition to or greater than that provided by this part.*"

(Emphasis added).

In practice, the State and Federal statutes may co-exist. *See Zamanian v. Christian Health Ministry,* No. 94–1781, 1994 WL 396179, 1994 U.S.Dist. LEXIS 10350 (D.La. July 21, 1994). If a medical review body's actions are performed with malice, but nonetheless are deemed to be objectively reasonable, the body will be immune under Federal law; the lack of State immunity because of the absence of good faith would be immaterial, for the Federal law would govern. If, however, the review actions are not objectively reasonable, thereby providing no Federal immunity, the court would then have to consider whether the actions were nonetheless taken in good faith, for, if they were, State immunity might exist.

The State law, in other words, may, *in some circumstances,* provide additional immunity or protection to medical review bodies. The State law is preempted by the Federal only to the extent that it provides *less* immunity than the Federal, not to the extent it provides *more.*

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.