**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMSC-017**

**Filing Date: April 12, 2011**

**Docket No. 32,202**

**WILLIAM K. SUMMERS, M.D.,**

> **Plaintiff-Respondent,**

**v.**

**ARDENT HEALTH SERVICES, L.L.C., AND
LOVELACE HEALTH SYSTEM, INC.,**

> **Defendants-Petitioners.**

**ORIGINAL PROCEEDINGS ON CERTIORARI**
**Nan G. Nash, District Judge**

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn C. Drennan
Edward Ricco
Santa Fe, NM

for Petitioners

Butt, Thornton & Baehr, P.C.
Emily A. Franke
Neil R. Blake
Albuquerque, NM

for Respondent

Bannerman & Johnson, P.A.
David C. Johnson
Deborah E. Mann
Albuquerque, NM

for Amicus Curiae
New Mexico Hospital Association

**OPINION**

**SERNA, Justice.**

**{1}** Defendants Ardent Health Services, L.L.C. and Lovelace Health Systems, Inc. terminated the medical privileges of Plaintiff William K. Summers, M.D. following a formal professional review. Plaintiff subsequently filed a lawsuit for damages. Defendants moved for summary judgment under the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. §§ 11101-11152 (1986), which provides immunity from damages for participants of professional peer review actions if four requirements are satisfied. The district court denied Defendants' motion for summary judgment, and the Court of Appeals affirmed. We granted certiorari to consider whether the Court of Appeals properly construed the immunity provisions of the HCQIA, and now reverse and remand.

**I.    BACKGROUND**

**{2}** Plaintiff held medical privileges at the Lovelace Sandia Health System (hospital) to practice psychiatry and internal medicine. His affiliation with the hospital began in 1995. In May 2005, Plaintiff's medical privileges were permanently suspended following a multi-step review and appeal process performed under the hospital's internal bylaws, which are designed to be consistent with the HCQIA.

**{3}** The peer review process commenced in 2002, in response to a complaint by one of Plaintiff's female patients (Patient A) that Plaintiff used sexually explicit and offensive language during a psychiatric consultation. Defendants' Medical Executive Committee (MEC) appointed an ad hoc committee to investigate Patient A's complaint as well as complaints that Plaintiff was selling memory pills in violation of hospital policies. The ad hoc committee conducted three meetings over the course of a month; Plaintiff was present at the second and third meetings and was given an opportunity to respond to the information presented about him. Plaintiff admitted to the veracity of Patient A's complaints and to delivering memory pills to patients. The ad hoc committee recommended that Plaintiff be instructed to improve his chart documentation and that Plaintiff's admissions and consultations be reviewed for a six-month period. The MEC adopted these recommendations.

**{4}** In 2003, a second female patient (Patient B) complained that Plaintiff used sexually explicit and inappropriate language during a consultation. The incident was reported by a caseworker who contacted Patient B after her discharge from the hospital. Following a request by the hospital's Chief Medical Officer, the MEC appointed a second ad hoc committee to investigate Patient B's complaint and reports that Plaintiff was discharging patients to the nursing facility where he was the physician, contrary to directives by the patients' primary care physicians. In addition to reviewing Patient B's medical file, the second ad hoc committee reviewed the records of eleven of Plaintiff's patients. The committee found "a relatively high incidence of questionable medical decisions or treatments

2

rendered" by Plaintiff, and identified seven problems specific to individual patients and three general problems. Plaintiff was not interviewed by the second ad hoc committee, contrary to the hospital's bylaws. Based on the second ad hoc committee's findings and recommendations, the MEC suspended Plaintiff's internal medicine privileges, placed Plaintiff's psychiatric privileges on probation for two years, and prohibited Plaintiff from discussing any sexual issues with patients. The MEC reported this action in an adverse action report to the National Practitioner Data Bank (NPDB).

{5} Plaintiff appealed the MEC's decision. A two-day hearing was held in front of a Professional Review Committee (PRC), composed of medical practitioners "selected to exclude any individuals in direct competition" with Plaintiff, to determine if the MEC had acted unreasonably or arbitrarily and capriciously. Both the MEC and Plaintiff were represented by counsel, and afforded the opportunity to call witnesses (the MEC called four; Plaintiff testified on his own behalf) and conduct cross-examination during the hearing. Plaintiff again admitted to the conduct relating to Patient A, but denied the allegations of Patient B, arguing that neither the story of Patient B nor the notes of the caseworker were credible. Following the hearing, both Plaintiff and the MEC submitted written statements with requested findings of facts and recommendations.

{6} The PRC concluded that some of the specific issues raised by the ad hoc committee were unfounded, but credited testimony by members of the committee that they remained concerned with the general standard of care provided by Plaintiff. Finding Plaintiff's use of explicit sexual language during consultations with female patients to be "[o]f primary importance" and evidence of a pattern of sexually inappropriate language with female patients, the PRC recommended that Plaintiff's internal medicine privileges remain suspended and his psychiatric privileges be suspended. The MEC unanimously adopted the PRC's recommendations.

{7} Plaintiff again appealed the MEC's decision, and a hearing was held before the Board of Trustees Appellate Review Committee (ARC), composed of hospital executives. Prior to the hearing, the ARC members were provided with statements and exhibits from Plaintiff and the MEC, both represented by counsel; each party was permitted thirty minutes for argument. After the hearing, the ARC requested, with Plaintiff's consent, that the PRC submit additional findings of fact and clarify its issues of concern. The PRC submitted a report stating that its concerns were related to Plaintiff's "treatment of his female patients in all areas of his practice." The ARC ultimately recommended that the Board of Trustees uphold the permanent suspension of Plaintiff's privileges. The Board of Trustees adopted the ARC's recommendation. A revised adverse action report was submitted to the NPDB.

{8} Following the Board of Trustees' suspension of his privileges, Plaintiff filed suit for damages in the Second Judicial District Court, claiming defamation, breach of contract, prima facie tort, and tortious interference with prospective contracts. Plaintiff alleged that the investigations were retaliatory, conducted as a result of his reporting questionable practices of Defendants' hospital administrators, and that the ad hoc committees and the

MEC failed to conduct investigations into the allegations against Plaintiff before suspending him. Defendants filed a motion for summary judgment, asserting immunity under the HCQIA.[1] Plaintiff responded to the motion for summary judgment and submitted an affidavit stating the Defendants had proceeded in bad faith and were unreasonable in the peer review process. After a hearing on all four of the requirements for HCQIA immunity, the district court denied Defendants' motion for summary judgment, ruling that "[a] genuine issue of material fact exists regarding the reasonableness of the efforts taken by Defendant[s] to obtain the facts of the matter during the professional review action." The district court's order did not address the other three immunity requirements.

{9} The district court certified the order denying summary judgment for interlocutory appeal to the Court of Appeals. The Court of Appeals limited its review to the second requirement of the HCQIA immunity standard. *Summers v. Ardent Health Services, L.L.C.*, 2010-NMCA-026, ¶ 11, 147 N.M. 506, 226 P.3d 20. Although the Court acknowledged that the reasonableness of the fact-finding process depended on the totality of the circumstances, *id.* ¶ 14, it focused its discussion on the fact-finding relating to Patient B, *id.* ¶ 15. The Court concluded that the reliance by the peer reviewers on the caseworker's notes, particularly when Plaintiff disputed the content of those notes, "raise[d] a question as to the reasonableness of the peer reviewers' efforts to find and verify the facts supporting their action." *Id.* ¶ 16. Based on this conclusion, the Court of Appeals upheld the district court's denial of Defendants' motion for summary judgment. *Id.* ¶ 18.

## II.     ANALYSIS

### A.     Standard of Review

{10} Appellate review of orders granting or denying summary judgment are reviewed de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. A motion for summary judgment under Rule 1-056 NMRA is granted only when there are no issues of material fact, with the facts viewed in the light most favorable to the non-moving party. *Romero*, 2010-NMSC-035, ¶ 7. The movant has the burden of producing "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* ¶ 10 (internal quotation marks and citation omitted). The non-moving party then must "demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted). In addition to being specific, these facts must be material to the dispute, and the applicable substantive law determines whether a fact is material. *Id.* ¶ 11 (using federal antitrust law as the "filter" through which the state summary judgment standard is applied).

---

[1]Defendants also raised the defense of immunity under the New Mexico Review Organization Immunity Act (ROIA), NMSA 1978, §§ 41-9-1 to -7 (1979). The district court concluded that the HCQIA was determinative of Defendants' motion for summary judgment and thus did not address the application of the ROIA.

**{11}** The burden-shifting provision of HCQIA immunity provides a twist on the typical summary judgment standard. "The HCQIA creates a rebuttable presumption in favor of immunity, and the plaintiff has the burden of proving by a preponderance of the evidence that the peer review process was not reasonable." *N. Colo. Med. Ctr., Inc. v. Nicholas*, 27 P.3d 828, 838 (Colo. 2001) (en banc); *accord Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1333 (11th Cir. 1994). Immunity should be granted unless the district court can answer the following question in the affirmative: "Might a reasonable jury, viewing the facts in the best light for [the plaintiff], conclude that [the plaintiff] has shown, by a preponderance of the evidence, that the defendants' actions are outside the scope of § 11112(a)?" *Bryan*, 33 F.3d at 1333-34 (first alteration in original) (quoting *Austin v. McNamara*, 979 F.2d 728, 734 (9th Cir. 1992)).[2]

**{12}** Whether a professional review action was taken after a reasonable effort to obtain the facts is determined by a review of the totality of the circumstances. *Brader v. Allegheny Gen. Hosp.*, 167 F.3d 832, 841 (3d Cir. 1999). Courts do not reweigh the evidence considered during the professional review process. *Bryan*, 33 F.3d at 1337. The HCQIA "does not require that the professional review result is an actual improvement of the quality of health care, nor does it require that the conclusions reached by the reviewers were in fact correct. . . . [T]he good or bad faith of the reviewers is irrelevant." *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 378 (5th Cir. 2008) (internal quotation marks and footnotes omitted). The role of the appellate court is to consider whether the professional review action was objectively reasonable. *Id.* at 379-80 ("Our sister circuits have roundly rejected the argument that . . . subjective motivations overcome HCQIA immunity, as do we." (footnote omitted)).

**B.     HCQIA Immunity Applies When the Fact-Finding Process is Objectively Reasonable.**

**{13}** While this Opinion marks the first opportunity this Court has had to consider the immunity provisions of the HCQIA, we previously have discussed the policy of utilizing professional peer review actions to assure quality health care. In *Southwest Community Health Services v. Smith*, we described the ROIA as "promot[ing] the improvement of health care in New Mexico." 107 N.M. 196, 198, 755 P.2d 40, 42 (1988). "[The ROIA] recognizes that candor and objectivity in the critical evaluation of medical professionals by medical professionals is necessary for the efficacy of the review process." *Id.* Likewise, the goal of the HCQIA immunity provision is to promote professional peer review to prevent the practice of medicine by incompetent medical professionals. 42 U.S.C. § 11101 (2). The HCQIA provides immunity from damages, the threat of which "unreasonably discourages

---

[2]For an interesting discussion of the role of the jury in deciding whether immunity under the HCQIA is proper in a given case, a question we need not address in this Opinion, see *Bryan*, 33 F.3d at 1332-33, and *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 33, 36 (1st Cir. 2002).

physicians from participating in effective professional peer review." 42 U.S.C. § 11101 (4).[3] Any consideration of the immunity provided by the HCQIA, therefore, must be conducted in light of the goal of promoting physician participation in professional peer review activities.

{14} Immunity applies when a professional review action, as defined at 42 U.S.C. § 11151(9), is taken in compliance with the standards of Section 11112(a):

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
> (2) after a reasonable effort to obtain the facts of the matter,
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

The statute presumes compliance, and thus immunity, unless "the presumption is rebutted by a preponderance of the evidence." *Id.* At issue in this appeal is the second of the immunity requirements, whether Defendants permanently suspended Plaintiff's internal medicine and psychiatry privileges "after a reasonable effort to obtain the facts of the matter." 42 U.S.C. § 11112(a)(2). In order to rebut the presumption of reasonableness, Plaintiff must produce evidence showing that the fact-finding process conducted by Defendants was *not* objectively reasonable. *See Poliner*, 537 F.3d at 379-80.

{15} Under the HCQIA, a physician is entitled only to a reasonable investigation. *See Poliner*, 537 F.3d at 380 (noting that a physician is "entitled to a *reasonable* effort, not a perfect effort"); *Singh*, 308 F.3d at 43 (same). The HCQIA does not require participants at every level of a peer review action to perform an independent investigation of the facts. Participants in later stages of the review process are entitled to rely on information gathered in earlier stages; reliance on the information provided by other doctors is presumptively reasonable. *See Poliner*, 537 F.3d at 380 (stating that peer reviewers were "entitled to rely on the information provided . . . by the other doctors, and there is nothing to suggest that the

---

[3]We note that Plaintiff filed suit for damages only, though the HCQIA does not provide immunity from suits for injunctive or declaratory relief. *See Poliner*, 537 F.3d at 381 ("The immunity from money damages may work harsh outcomes in certain circumstances, but that results from Congress' decision that the system-wide benefit of robust peer review in rooting out incompetent physicians, protecting patients, and preventing malpractice outweighs those occasional harsh results; that giving physicians access to the courts to assure procedural protections while denying a remedy of money damages strikes the balance of remedies essential to Congress' objective of vigorous peer review.").

6

information was facially flawed or otherwise so obviously deficient as to render [the d]efendants' reliance 'unreasonable'" (footnote omitted)); *Gabaldoni v. Wash. Cnty. Hosp. Ass'n*, 250 F.3d 255, 261-62 (4th Cir. 2001) (finding it reasonable for the ultimate decision maker to rely on reports of various committees because "[a]lthough the summaries [of the investigations] did not—and indeed could not—include every single fact and finding from every committee report, there is no evidence to suggest that the summaries provided to the Board were materially insufficient or misleading"); *Bryan*, 33 F.3d at 1335 (concluding that the plaintiff did not overcome the presumption that reasonable effort was used to gather facts when three separate panels submitted reports to the board, "which made its decision based upon the documentary record developed during the various peer review proceedings and after [the plaintiff] had the opportunity to make a presentation"); *N. Colo. Med. Ctr.*, 27 P.3d at 840 (holding that the board of directors acted reasonably to obtain the facts when it suspended the physician "only after a lengthy investigation by a number of committees and independent parties").

**{16}** The presumption of reasonableness is not overcome by simply identifying one piece of factually questionable evidence upon which the peer review committees relied. *See Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 469 (6th Cir. 2003) (concluding a physician did not meet his burden by only making "conclusory statements attacking individual items of evidence considered by the reviewers"); *Brader*, 167 F.3d at 841 (holding the fact-finding process reasonable despite the plaintiff's argument that one study was flawed and his views were not heard when the ultimate decision was based on an initial review, first hand observations, testimony before an impartial panel, written submissions, and two levels of appellate review). To overcome the presumption of reasonableness, the physician must show that the fact-finding process is unreasonable in its totality.

**{17}** Nor can the physician challenge the fact-finding process by questioning the integrity or motivations of the individuals conducting the professional peer review. *See Matthews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 637 (3d Cir. 1996) (stating that a challenge to the integrity of one of the investigating committees did not rebut the presumption that the defendants had "engaged in a reasonable effort to obtain the facts"); *Reyes v. Wilson Mem'l Hosp.*, 102 F. Supp. 2d 798, 818-19 (S.D. Ohio 1998) (finding that the plaintiff did not rebut the presumption of reasonableness when the "only evidentiary rejoinder . . . consists of testimony impugning the motives of the [d]efendants" and an argument that additional evidence could have been discovered). Because HCQIA immunity applies when the fact-finding process is objectively reasonable, an inquiry into the subjective intent of the individual members of the various review committees is inappropriate.

**{18}** Additionally, the failure of a professional peer review to comply in full with applicable bylaws does not render the fact-finding process unreasonable. "Provided that a peer review action as defined by the statute complies with those standards, a failure to comply with hospital bylaws does not defeat a peer reviewer's right to HCQIA immunity from damages." *Poliner*, 537 F.3d at 381. Compliance with the bylaws is a good measure of the reasonableness of the peer review process, but doing so is not required by the HCQIA.

**{19}** To rebut the presumption of reasonableness in the fact-finding efforts of the peer review action, a plaintiff must point to specific and material facts demonstrating that the fact-finding efforts were unreasonable. *See Goodwich v. Sinai Hosp. of Baltimore, Inc.*, 653 A.2d 541, 546 (Md. Ct. Spec. App. 1995) (concluding that the plaintiff did not meet his burden by "present[ing] no evidence, absent his own bare allegations, that a reasonable effort was not made to obtain the facts"). In *Brown v. Presbyterian Healthcare Services*, the Tenth Circuit held that the plaintiff successfully rebutted the presumption that the fact-finding process was reasonable by demonstrating, through expert testimony, that the peer review process consisted of one meeting, two chart reviews, and two hours of deliberation before the plaintiff's privileges were revoked. 101 F.3d 1324, 1333-34 (10th Cir. 1996). Unlike the cases cited above, the *Brown* plaintiff presented sufficient evidence from which "a reasonable jury could have found the panel's review to be unreasonably restrictive and not taken after a 'reasonable effort to obtain the facts.'" *Id.* at 1334.

### C. Plaintiff Did Not Rebut the Presumption That Defendants Made a Reasonable Effort to Obtain the Facts of the Matter.

**{20}** The Court of Appeals determined that Plaintiff rebutted the presumption of reasonableness by presenting facts material to the question of the reasonableness of the fact-finding process. *Summers,* 2010-NMCA-026, ¶¶ 14-16. Focusing its analysis on the allegations of Patient B, the Court of Appeals found that Plaintiff had met his burden by articulating the following "concerns: that Patient B's allegation was based on notes taken by a case manager during a phone conversation, that neither the case manager nor [Patient B] was ever contacted or questioned regarding the incident, and that [Plaintiff] vigorously disputed the allegation throughout the process." *Id.* ¶ 14. We cannot agree that Plaintiff rebutted the presumption of HCQIA immunity in this case.

**{21}** In order to rebut the presumption that Defendants were reasonable in their fact-finding efforts, Plaintiff must do more than identify one part of the investigation—the failure of the ad hoc committee to interview Patient B and the caseworker—that could have been more thorough, *see Brader*, 167 F.3d at 841; *Bryan*, 33 F.3d at 1335, or argue that the peer review action was taken in bad faith, *see Bryan*, 33 F.3d at 1335. Although the second ad hoc committee failed to interview Plaintiff, as required by the hospital bylaws, this fault is not fatal. *See Poliner*, 537 F.3d at 381. Plaintiff must identify fallacies in the fact-finding process that render it unreasonable as a whole. *See Goodwich*, 653 A.2d at 546-47. Plaintiff's privileges were permanently suspended after two investigations by separate ad hoc committees; reviews of the ad hoc committees' reports by the MEC; an appeal to the PRC, at which Plaintiff was represented by counsel, presented evidence, cross-examined witnesses, and was provided the opportunity to call witnesses; a final appeal to the ARC; and a review by the Board of Trustees of the entire record. Plaintiff's allegations of bad faith and the failure of the ad hoc committee to interview the caseworker or Patient B were not sufficient to meet the required burden on summary judgment. *Cf. Brown*, 101 F.3d at 1334.

8

**{22}** The Court of Appeals erred by not considering the totality of the fact-finding process, but instead focusing on the peer reviewer's reliance on the caseworker's notes relating to Patient B. *Summers*, 2010-NMCA-026, ¶ 14. Although our review of the proceedings indicates that the incidents involving Patients A and B were of primary concern to the peer reviewers, the final action suspending Plaintiff's medical privileges was taken after a fact-finding process that involved a broad and thorough investigation of Plaintiff's care regarding a number of patients. We conclude that the fact-finding process conducted by Defendants was reasonable as a matter of law.

## III.    CONCLUSION

**{23}** For the foregoing reasons, we reverse the opinion of the Court of Appeals. Because the district court did not consider the remaining three immunity requirements of the HCQIA summary judgment standard, we remand for further proceedings.

**{24}    IT IS SO ORDERED**.

_____
**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *Summers v. Ardent Health Services*, Docket No. 32,202**

| CP | CIVIL PROCEDURE |
| --- | --- |
| CP-BP | Burden of Proof |
| CP-SJ | Summary Judgment |