857 P.2d 771

**Frank L. SANCHEZ and Joanne Sanchez, Plaintiffs–Appellants,**

v.

**The CHURCH OF SCIENTOLOGY OF ORANGE COUNTY, Defendant–Appellee.**

No. 20839.

Supreme Court of New Mexico.

June 23, 1993.

Rehearing Denied July 28, 1993.

Civerolo, Wolf, Gralow & Hill, Roberto C. Armijo, Albuquerque, for plaintiffs-appellants.

White, Koch, Kelly & McCarthy, Janet E. Clow, Karen Kilgore, Santa Fe, for defendant-appellee.

## OPINION

FRANCHINI, Justice.

Frank and Joanne Sanchez filed an action in district court to recover damages for violation of the New Mexico Unfair Practices Act, for breach of contract, for intentional infliction of emotional distress, for injunctive relief, for breach of covenant of good faith and fair dealings, for civil conspiracy, and for tort. The Church of Scientology of Orange County (Church) was one

of four named defendants. The Church moved to dismiss for lack of jurisdiction. The district court granted the Church's motion. The Sanchezes appeal. We affirm.

### I.

This case stems from the Sanchezes' involvement in a series of management training courses. Initially, they were impressed with defendant Sterling Management Systems (Sterling) and agreed to attend classes at Sterling's training facility in California. Upon advice of Sterling's representatives, the Sanchezes obtained additional training from the Scientology and Dianetics Center (Center), also located in California and operated by the Church. They became dissatisfied with the management consulting training and thereafter chose to disassociate with the defendants, to repudiate their agreements, and to return from the Center to New Mexico. After returning from California, a Church agent attempted to contact the Sanchezes, and up to two hundred mailings were sent to them from various defendants. They filed their complaint on December 30, 1991.

On April 13, 1992, the Church filed a motion to dismiss the claim, challenging the personal jurisdiction of the New Mexico court over the Church under the long-arm statute. *See* NMSA 1878, § 38–1–16 (Repl.Pamp.1987). The motion was supported by an affidavit from the Secretary of the Church stating that: the Church is a nonprofit corporation located in Tustin, California; the Church does not have now, nor has it ever had, an office established or operating in New Mexico; all physical contacts between the Sanchezes and the Church occurred in California; all services, interviews, and consultations rendered by the Church occurred in California and; a few letters were sent and a few phone calls were made to the Sanchezes in New Mexico.

In response, the Sanchezes attached several affidavits describing their ordeal. One incident involved a counselor from the Center who attempted to contact them in New Mexico after their relationship with the Church was terminated. Also, a check for $120,000, made out in blank by Frank Sanchez, was presented by the Church to his bank in New Mexico for payment. At Frank Sanchez's direction, the check was not honored.

The Church's reply included an affidavit by its president, John Woodruff, which essentially denied any corporate connection or relationship between the Church and Sterling. He denied that the Church controlled any activities of Sterling or conspired or participated with Sterling with respect to Sterling's contacts with the Sanchezes. Finally, he stated that it was only after the Sanchezes arrived in California to attend a seminar given by Sterling that the Church became aware of their existence or had any contact with them.

The district court granted the motion to dismiss on July 27, 1992. The Sanchezes filed a motion to reconsider and to allow them to present argument and evidence. This motion was denied, and the order dismissing the complaint for lack of jurisdiction was filed on August 17, 1992.

### II.

The main issue before us is whether the acts of the Church warrant the exercise of personal jurisdiction over the Church by New Mexico. We also decide whether the district court erred by not conducting a hearing on the motion to dismiss or by not staying its ruling on the motion pending further discovery. We do not address the Sanchezes' contention that granting the motion to dismiss deprived them of a right to trial by jury on this issue. Because they did not raise this issue to the district court, it was not properly preserved for review on appeal. *See Beneficial Fin. Co. v. Alarcon,* 112 N.M. 420, 424, 816 P.2d 489, 493 (1991).

The long-arm statute sets out five different acts, which if conducted in our state, and if any cause of action arises from such act, submit the actor to the jurisdiction of our courts. NMSA 1978, § 38–1–16 (Repl.Pamp.1987). The pertinent acts here are the transaction of any business or the commission of a tort within

this state. To determine whether personal jurisdiction exists over an out-of-state nonresident defendant, we apply the following three-step test: Whether, (1) defendant's acts are enumerated in the long-arm statute; (2) plaintiff's cause of action arises from the acts; and (3) minimum contacts necessary to satisfy due process are established by defendant's acts. *See State Farm Mut. Ins. Co. v. Conyers*, 109 N.M. 243, 244, 784 P.2d 986, 987 (1989); *Salas v. Homestake Enter., Inc.*, 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987).

The Sanchezes claim that the Church "transacted business" in New Mexico. They support this argument with allegations from their complaint that co-defendant Sterling was an agent and employee of the Church, and thus its acts should be imputed to the Church. The Sanchezes also suggest that the activities of Sterling are attributable to the Church because they have alleged a civil conspiracy.

It is the acts of the Church and not the acts of Sterling that must provide the basis for personal jurisdiction over the Church. *See Visarraga v. Gates Rubber Co.*, 104 N.M. 143, 147, 717 P.2d 596, 600 (Ct.App.), *cert. quashed*, 104 N.M. 137, 717 P.2d 590 (1986). In *Allen v. Toshiba Corp.*, 599 F.Supp. 381 (D.N.M.1984), an issue addressed by the court was whether TAI, a subsidiary corporation which admittedly was subject to jurisdiction in New Mexico, was the agent or alter ego of Toshiba, the parent corporation, so as to render Toshiba subject to jurisdiction under New Mexico's long-arm statute. The allegation that TAI was acting as Toshiba's agent was controverted by an opposing affidavit setting forth facts similar to those in the Church's affidavit. The court noted that when the alleged jurisdictional basis was controverted, plaintiff had to sustain the burden of proof on the jurisdictional issue. *Id.* at 387. Because plaintiff failed to sustain that burden, the court granted the defendant's motion to dismiss for lack of personal jurisdiction. Similarly, here, where there is no parent-subsidiary relationship, the Sanchezes failed to sustain their burden on the agency theory.

The case of *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij*, 710 F.2d 1449 (10th Cir.1983), is also instructive to our analysis. Applying the Utah long-arm statute, Utah Code Ann. Section 78–27–24 (1977), the Tenth Circuit decided various personal jurisdiction issues. In particular, the court examined whether one conspirator's acts were "sufficient to establish personal jurisdiction over [the other] nonresident coconspirators." *Bonaventura*, 710 F.2d at 1454. In *Bonaventura*, the plaintiff alleged conspiracy and defendants countered by sworn affidavits that no conspiracy existed. Plaintiff did not contravene defendants' affidavits, and the court determined that the threshold burden of establishing personal jurisdiction was not met. *Id.* " 'Mere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of coconspirators outside the territorial limits of the court.' " *Id.* (quoting *Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir. 1972)).

■ We hold that the Church properly and adequately challenged the Sanchezes' prima facie jurisdictional allegations by submitting Woodruff's affidavit. That affidavit established the separateness of the corporate entities, the lack of an employee or agency relationship between the Church and Sterling, and the denial of a conspiracy. Therefore, the Sanchezes had the burden of proving the jurisdictional allegations, and the record does not reveal proof of the jurisdictional allegations contained in the complaint. *See State ex rel. Anaya v. Columbia Research Corp.*, 92 N.M. 104, 105, 583 P.2d 468, 469 (1978). We hold that the Church did not "transact business" in New Mexico and therefore this requirement of the long-arm statute is not satisfied. Our courts lack personal jurisdiction over the Church on this claim.

■ The Sanchezes also claim that the Church committed a tortious act within the state. Section 38–1–16. The acts complained of were attempts by Church agents to contact the Sanchezes after they returned to New Mexico through phone calls,

over 200 mailings, and two personal visits. The Sanchezes alleged that these actions gave rise to a claim for intentional infliction of emotional distress.

The Sanchezes failed to sustain their burden on this jurisdictional issue as well. The Church controverted the Sanchezes' affidavits. The Church's affidavits support the following acts by the Church: several phone calls and mailings and two unsuccessful attempts by an agent of the Church to contact them. These acts, taken alone, are not enough to support the commission of a tort within this State, especially a tort in which extreme and outrageous conduct is a key element. *See Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct.App.1981). These acts, at most, amount to indignations and annoyances. The Sanchezes affidavits state that they were personally offended and angered by the communications. The mailings and communications caused Mrs. Sanchez "anxiety, fear and worry" because her receipt of the materials reminded her of the California experience. The New Mexico conduct alleged was not " 'beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.*

■■■■ Finally, the Church does not have sufficient minimum contacts with New Mexico, and maintaining a suit here would offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). To determine whether "minimum contacts" were established, we look at the "degree to which defendant purposefully initiated its activity within the State". *Customwood Mfg., Inc. v. Downey Constr. Co.*, 102 N.M. 56, 57, 691 P.2d 57, 58 (1984). The activity consists of some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Valley Wide Health Servs., Inc. v. Graham*, 106 N.M. 71, 73, 738 P.2d 1316, 1318 (1987) (emphasis omitted) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78

S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). The purposeful activity requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts. We agree with the Ninth Circuit "that ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.' " *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985) (citations omitted), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). Furthermore, it would offend our conception of fair play and substantial justice to subject the Church to suit for unsuccessfully attempting to contact the Sanchezes on two occasions. The complaint and its supporting affidavits do not allege sufficient "minimum contacts" to allow the exercise of extraterritorial jurisdiction over the Church consistent with the Due Process Clause.

■■■■ The Sanchezes next argue that they were wrongly denied a hearing on the Church's motion to dismiss. We analyze a motion to dismiss as a summary judgment motion when matters outside the pleadings are considered. *See Boyd v. Permian Servicing Co.*, 113 N.M. 321, 322, 825 P.2d 611, 612 (1992). It is within the district court's discretion when considering a motion for summary judgment to hold an oral hearing. *See National Excess Ins. Co. v. Bingham*, 106 N.M. 325, 327, 742 P.2d 537, 539 (Ct. App.1987). Here, the issue of personal jurisdiction was fully briefed by both parties, and both the Sanchezes and the Church submitted sworn testimony through affidavits. Although there were two requests for hearings on the motion, both requests were made by the Church, and the record is void of information that the district court was put on notice that any additional evidence would be presented at the motion hearings. The district court was within its discretion by disposing of the motion on the materials submitted. *See id.; cf. Nolan v. de Baca*, 603 F.2d 810, 812 (10th Cir.1979) (holding no abuse of discretion under federal rules where oral argument was denied),

*cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980).

The Sanchezes finally contend that the district court wrongfully refused to permit them to pursue discovery. Contrary to their contention, our reading of the record shows only a denial of a request for stay of decision pending discovery. Nevertheless, we review a district court's decision limiting discovery solely on the grounds of abuse of discretion. *Roberts v. Piper Aircraft Corp.,* 100 N.M. 363, 368, 670 P.2d 974, 979 (Ct.App.1983). As the district court noted, "[t]he opportunity for discovery has always existed since the inception of this case." The Sanchezes were free to conduct discovery, if necessary, to support their jurisdictional allegations up until the time of the court's ruling. Considering that the complaint was filed on December 30, 1991, regarding events which occurred in October through December 1989, and the court's order was entered on July 27, 1992, the Sanchezes had ample time to conduct discovery. The district court did not abuse its discretion by refusing to stay its ruling pending additional discovery.

In view of the foregoing, the decision of the district court granting the Church's motion to dismiss is affirmed.

**IT IS SO ORDERED.**

RANSOM, C.J., and FROST, J., concur.