918 P.2d 723

**Sandy DeVENZEIO and Mike DeVenzeio, husband and wife, Plaintiffs–Appellants,**

v.

**RUCKER, CLARKSON & McCASHIN, a partnership including a professional corporation, p/k/a Rucker & Clarkson, Rucker & Clarkson, a California partnership, and Fred Rucker, Defendants–Appellees.**

No. 16458.

Court of Appeals of New Mexico.

April 12, 1996.

Certiorari Denied June 20, 1996.

Robert M. Janes, Robert M. Janes, P.A., Albuquerque, for Appellants.

Charles K. Purcell, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Appellees.

## OPINION

PICKARD, Judge.

1. This case calls upon us to decide questions of our courts' personal jurisdiction over out-of-state attorneys who were retained by New Mexico residents in California to conduct litigation pending in that state. We hold that the district court properly dismissed the complaint.

2. Appellants, Sandy and Mike DeVenzeio (the DeVenzeios), are New Mexico residents. In 1991, they were involved in litigation in California and Arizona courts. The DeVenzeios hired Appellees Charles Rucker and the California law firm of Rucker & Clarkson, now known as Rucker, Clarkson & McCashin (collectively, Rucker) to represent them in the California and Arizona matters.

3. The DeVenzeios' first attorneys, who were also from California, were disqualified from representing them in the California matter and referred the DeVenzeios to Rucker. The DeVenzeios contacted Rucker at his law offices in Los Angeles and met with him two to three times in Los Angeles prior to retaining him as their lawyer. The fee agreement between the DeVenzeios and Rucker provided that the agreement was entered into in California and specified that its terms would be interpreted according to California law. According to the fee agreement, any dispute arising from Rucker's representation of the DeVenzeios was to be handled through binding arbitration in California.

4. Rucker has never resided in New Mexico or been licensed to practice law in New Mexico. Rucker owns no property in New Mexico, has no offices in New Mexico, and has no business interests in New Mexico. Rucker has never had agents or employees in New Mexico, and has never advertised or solicited clients in New Mexico; nor has Rucker ever been listed in a New Mexico telephone directory. It is undisputed that Rucker's representation of the DeVenzeios took place entirely in California except for one trip to Arizona by an associate who appeared as co-counsel in the Arizona litigation. Rucker performed all services on the DeVenzeios' behalf in California and Arizona. Rucker's only contacts with New Mexico were through numerous telephone calls and letters directed to the DeVenzeios at their home in New Mexico to inform them of the progress of the litigation.

5. The California litigation was concluded in 1993. However, the DeVenzeios were disenchanted with Rucker's legal representation. In August 1994, they filed this lawsuit against Rucker in district court in New Mexico, alleging legal malpractice, breach of good faith, and deceit. This first complaint resulted in a default judgment against Rucker in September 1994, which was vacated by agreement of the parties. The DeVenzeios filed an amended complaint in November 1994. The district court granted Rucker's motion to dismiss for lack of personal jurisdiction in April 1995. The DeVenzeios appeal the dismissal. We affirm.

6. On appeal, the DeVenzeios claim that Rucker reached into New Mexico and committed tortious acts via interstate communications when he allegedly made deceitful, fraudulent misrepresentations in letters and telephone calls to them in New Mexico. They maintain that they would not have hired Rucker to represent them in the California and Arizona matters if Rucker had told them about his past corrupt legal practices. The gravamen of their tort claim is that Rucker wrongfully induced them to hire him in California and caused them to lose money in New Mexico and valuable legal rights in California by using the mails, fax, and telephone to make fraudulent misrepresentations about their claims and his services.

■ 7. We examine Rucker's actions vis-a-vis the DeVenzeios in the light of New Mexico's long-arm statute and constitutional due process principles. New Mexico's long-arm statute provides in pertinent part:

A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state;

. . . .

(3) the commission of a tortious act within this state[.]

NMSA 1978, § 38–1–16(A) (Repl.Pamp.1987). In *United Nuclear Corp. v. General Atomic Co.,* our Supreme Court held that New Mexico's long-arm statute extends the reach of New Mexico courts as far as constitutionally permissible. 91 N.M. 41, 42, 570 P.2d 305, 306 (1977).

■ 8. The constitutional standard requires that before a nonresident defendant may be sued in a forum state, the defendant must have sufficient minimum contacts with the forum state so that permitting the action will not violate "traditional concept[s] of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). A defendant will be found to have sufficient minimum contacts to satisfy due process where the defendant has a connection with the forum state and has acted in the state in such a manner that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate[.]" *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

■ 9. New Mexico case law has distilled these statutory and constitutional imperatives into a three-part test, which must be satisfied before a New Mexico court may exercise personal jurisdiction over a nonresident defendant such as Rucker. *Salas v. Homestake Enters., Inc.,* 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987). First, the defendant's alleged acts must fall into a category that is specifically enumerated in the New Mexico long-arm statute. *Id.* Second, the cause of action asserted by the plaintiff must arise from and concern the defendant's conduct. *Id.* Finally, there must be sufficient minimum contacts between the defendant and the state of New Mexico to satisfy due process concerns. *Id.; see also F.D.I.C. v. Hiatt,* 117 N.M. 461, 463, 872 P.2d 879, 881 (1994). The purposeful availment test of *Hanson* has been identified by New Mexico courts as the focus of a minimum-contacts analysis. *Hiatt,* 117 N.M. at 464, 872 P.2d at 882; *State Farm Mut. Ins. Co. v. Conyers,* 109 N.M. 243, 245, 784 P.2d 986, 988 (1989). We examine the facts of this case to see whether Rucker purposefully availed himself of the privilege of conducting activities in New Mexico, thereby invoking the benefits and protections of New Mexico law. *See Sher v. Johnson,* 911 F.2d 1357, 1363 (9th Cir.1990) (analyzing a similar question under similar fact pattern).

■ 10. Ordinarily, the use of mail and telephone services to contact a New Mexico resident from out of state is insufficient to satisfy the "purposeful availment" prong of a

minimum-contacts analysis. *See Sanchez v. Church of Scientology,* 115 N.M. 660, 664, 857 P.2d 771, 775 (1993). In this case, however, the DeVenzeios argue that the tortious acts were perpetrated through the letters and telephone calls, thereby vesting personal jurisdiction in New Mexico. *See Russey v. Rankin,* 837 F.Supp. 1103 (D.N.M.1993) (letters sent to plaintiff by defendant formed the basis of plaintiff's suit). Rather than engage in a technical analysis of whether Rucker committed a tortious act, we must equate the "tortious act" which Rucker is alleged to have committed with minimum contacts to determine if due process has been satisfied. *Visarraga v. Gates Rubber Co.,* 104 N.M. 143, 146, 717 P.2d 596, 599 (Ct.App.), *cert. quashed,* 104 N.M. 137, 717 P.2d 590 (1986). As the U.S. Supreme Court explained in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* when the controversy arises out of the defendant's contacts with the forum state, the essential foundation of personal jurisdiction is the relationship between the defendant, the forum, and the litigation. 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

11. The DeVenzeios acknowledge that Rucker did not transact business in New Mexico and only contacted New Mexico by sending mail to the DeVenzeios and telephoning them at their Albuquerque home. Nevertheless, the DeVenzeios argue that Rucker is subject to New Mexico courts because he perpetrated the intentional torts of fraud, deceit, and misrepresentation in his communications through the letters and telephone calls. In this manner they distinguish the facts of *Valley Wide Health Services v. Graham,* 106 N.M. 71, 738 P.2d 1316 (1987), and *Tarango v. Pastrana,* 94 N.M. 727, 616 P.2d 440 (Ct.App.1980), in which the tortious acts were committed in another state. They encourage us to reach the same conclusion as was reached by the Court in *Russey,* 837 F.Supp. at 1105. In *Russey,* the Court found that a nonresident collection agency's activities in sending dunning letters to a New Mexico resident in an effort to collect on delinquent debts subjected the agency to jurisdiction in New Mexico. *Id.* The Court was careful to note that sending mail such as that complained of by the plaintiff in *Russey*

was the defendant's primary means of doing business, in contrast to the more typical case in which the sending of mail is a means to conduct other business. *Id.*

12. The instant case is distinguishable from *Russey.* Rucker's primary service to the DeVenzeios was to provide legal services in California on their behalf. These legal services were limited to pursuing rights and claims in California. Rucker's letters and telephone calls to the DeVenzeios in New Mexico were ancillary to this primary function. Moreover, we note that intentionally tortious communications formed the basis of the plaintiffs' claims in *Sanchez,* 115 N.M. at 661, 857 P.2d at 772. Nevertheless, the Supreme Court rejected the idea that these communications were sufficient to establish personal jurisdiction. *Compare Sanchez,* 115 N.M. 660, 857 P.2d 771, *with Russey,* 837 F.Supp. at 1105, *and Kathrein v. Parkview Meadows, Inc.,* 102 N.M. 75, 76, 691 P.2d 462, 463 (1984) (analyzing defendant's telephone call and mailing a brochure to the plaintiff in context of defendant's activities soliciting business in New Mexico).

13. In *Sawtelle v. Farrell,* 70 F.3d 1381 (1st Cir.1995), the defendant law firm, a resident of Florida, was conducting legal activities on behalf of the plaintiffs, who lived in New Hampshire. The plaintiffs complained that the defendant directed improper settlement advice from Florida to New Hampshire. In a malpractice claim filed in New Hampshire court, the plaintiffs contended that the telephone calls and letters which contained the advice caused them to lose valuable legal claims in Florida and resulted in financial loss to them in New Hampshire. *Id.* at 1390. The Court of Appeals for the First Circuit rejected this basis for personal jurisdiction. The court reasoned that while the alleged malpractice was not consummated until it was communicated to the plaintiffs in New Hampshire, the gravamen of the plaintiffs' claim was that they suffered the effects of the defendant's poor legal services in Florida. *Id.* The telephone and mail communications containing bad settlement advice were ancillary to the lawsuit in Florida and were too tenuous to support an asser-

tion of personal jurisdiction by New Hampshire. *Id.* at 1390–91.

14. As in *Sawtelle*, the dispute between the DeVenzeios and Rucker arose out of Rucker's representation of the DeVenzeios in California. The DeVenzeios claim that Rucker wrongfully withheld crucial information about his firm's legal problems that would have led the DeVenzeios not to choose Rucker as their attorney in the first place. However, the DeVenzeios were referred to Rucker, met with Rucker, and engaged in a fee agreement with Rucker in California for representation in California. The omission of pertinent information, disclosure of which might have caused the DeVenzeios to choose a different attorney, took place in California. When Rucker counselled the DeVenzeios to settle the California case, they lost the opportunity to litigate the matter in California and possibly reap a greater financial benefit. As in *Sawtelle*, any injury was to the DeVenzeios' rights in California as against the other parties in the California and Arizona matters.

15. Rucker's only contacts with New Mexico were telephone calls and letters, incidents of his representation of New Mexico residents in matters pending in California and Arizona. Under these circumstances, Rucker's communications with the DeVenzeios in New Mexico did not rise to the level of a purposeful availment of opportunities in New Mexico. *Sanchez*, 115 N.M. at 664, 857 P.2d at 775; *Valley Wide Health Servs.*, 106 N.M. at 72–73, 738 P.2d at 1317–18. *See Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir.1987) (brief visits by defendant's agents, letters, and telephone calls to forum state were not sufficient to justify exercise of personal jurisdiction); *Biederman & BRG, Inc. v. Schnader, Harrison, Siegal & Lewis*, 765 F.Supp. 1057, 1061 (D.Kan. 1991) (same); *Edmunds v. Superior Ct. (Ronson)*, 24 Cal.App.4th 221, 29 Cal.Rptr.2d 281, 290 (1994) (same).

16. The DeVenzeios next argue that any torts committed by Rucker were committed in New Mexico because the economic loss caused by Rucker's tortious behavior was felt in New Mexico. They argue that Rucker should be subject to New Mexico law because

when Rucker willfully, intentionally, and fraudulently misrepresented facts to them, he knew that they would suffer economic harm in New Mexico as a result of these actions.

17. This "effects" argument is similar to the argument advanced by the plaintiffs in *Tarango*, 94 N.M. at 728, 616 P.2d at 441. In *Tarango*, part of the plaintiffs' theory of jurisdiction was that a tort is not complete until injury occurs. *Id.* Because the tort of malpractice was begun in Texas (when the medical procedure was performed), but completed in New Mexico (where the effects of the malpractice were experienced), the plaintiffs argued that New Mexico had personal jurisdiction over the defendants. *Id.* This Court rejected the plaintiffs' argument that malpractice in Texas should subject the defendant provider to jurisdiction in New Mexico. *Id.* at 729, 616 P.2d at 442. "[T]he idea that tortious rendition of [personal] services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having [personal] services ... generally available." *Id.* (quoting *Wright v. Yackley*, 459 F.2d 287 (9th Cir.1972)); *see also Edmunds*, 29 Cal. Rptr.2d at 291 (out-of-state attorneys would be discouraged from representing California residents in other states if malpractice and other actions could readily be pursued based on the client's residence).

18. The provision of legal services in this case is similar to the provision of the medical procedure in *Tarango*. It is subject to the same analysis. It may have been foreseeable to Rucker that tortious acts committed in pursuing the California claim would affect the DeVenzeios' economic status in New Mexico. However, that is not sufficient to extend personal jurisdiction in New Mexico over Rucker where Rucker did not avail himself of the privilege of conducting activities in New Mexico. *See Tarango*, 94 N.M. at 729, 616 P.2d at 442.

19. Our decision is consistent with other jurisdictions considering similar claims. *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir.1986), is particularly persuasive. In *Kowalski*, the plaintiffs

engaged the defendant, a Massachusetts law firm, to prosecute a wrongful death claim in Massachusetts. The defendant had no agent, law office, or property in New Hampshire and did not solicit business from New Hampshire residents. The plaintiffs moved to New Hampshire before the wrongful death suit was filed, *id.* at 9, and later sued the defendant for legal malpractice in New Hampshire on the theory that New Hampshire courts had personal jurisdiction over a defendant who committed a tort in Massachusetts when the economic effects of the tort were felt in New Hampshire, *id.* at 10. The plaintiffs urged the court to view the action as one involving a tort that was committed in part in New Hampshire. *Id.* The First Circuit rejected this argument, explaining that the plaintiffs lost their rights of prosecution and potential recovery in Massachusetts. *Id.* at 11. The only interest of New Hampshire in the suit by the plaintiffs against the defendant for malpractice was that the defendant represented a New Hampshire resident in a cause of action in Massachusetts. The practice or malpractice of law in Massachusetts could not reasonably form the basis of a tort action in New Hampshire. *Id.*

20. Applying the *Kowalski* analysis to the case at bar, the DeVenzeios have alleged malpractice by a California lawyer concerning litigation arising out of events in California. As in *Kowalski*, the DeVenzeios' injury occurred when their California lawsuit was improperly handled in California by the attorney whom they retained in California to represent them in the California matter. Any mishandling by Rucker of the DeVenzeios' California case resulted in the DeVenzeios losing rights in California. New Mexico's only connection with the case is its concern that justice be done for its residents. There is no reason to suspect that a California court will not accomplish this.

21. We hold that Rucker did not purposefully avail himself of the privilege of conducting business in New Mexico such that he could reasonably foresee being sued in New Mexico. Rucker's telephone calls and letters to the DeVenzeios did not rise to the level of minimum contacts. The tortious conduct was committed in California and concerned litiga-

tion in California. To permit the case to proceed in a New Mexico court would offend traditional notions of fair play and substantial justice, and would amount to a denial of Rucker's right of due process. We affirm the district court's dismissal of this case for lack of personal jurisdiction.

22. **IT IS SO ORDERED.**

ALARID and BUSTAMANTE, JJ., concur.