# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: February 18, 2015

**NO. 33,150**

**FLAGSTAR BANK, FSB,**

      Plaintiff-Appellee,

v.

**JONATHAN K. LICHA, and**
**PAMELA S. MACKENZIE-LICHA,**
**husband and wife; et al.,**

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY**
**Edmund H. Kase III, District Judge**

Sutin, Thayer & Browne, P.C.
Michelle K. Ostrye
Justin R. Sawyer
Albuquerque, NM

for Appellee

Eric Ortiz Law
Eric N. Ortiz
Joseph C. Gonzales
Jean Y. Chu
Albuquerque, NM

for Appellants

**_____OPINION**

**GARCIA, Judge.**

{1}   Defendants Jonathan K. Licha and Pamela S. MacKenzie-Licha (the Lichas), appeal the district court's order granting summary judgment for foreclosure in favor of Plaintiff Flagstar Bank, FSB (Flagstar). The Lichas primarily assert on appeal that issues of fact concerning Flagstar's standing to enforce the note and mortgage precluded summary judgment. We disagree with the Lichas and affirm.

**BACKGROUND**

**A.    The Loan and the District Court Proceedings**

{2}   On March 4, 2009, the Lichas executed a promissory note to Lending Solutions, Inc. (Lending Solutions) to borrow $181,878. As security for the loan, the Lichas signed a mortgage contract with Mortgage Electronic Registration Systems, Inc. (MERS), as the nominee for Lending Solutions. On July 18, 2011, Flagstar filed a foreclosure complaint against the Lichas, alleging that Flagstar was the current holder of the note and the mortgage and that the Lichas were in default. The copy of the note that Flagstar attached to its complaint contained an indorsement signed by Ryan P. Tally, vice president of Lending Solutions, along with the words, "PAY TO ORDER OF: FLAGSTAR BANK, FSB WITHOUT RECOURSE." Flagstar also attached to its complaint a copy of the mortgage with MERS and a copy of a

mortgage assignment from MERS to Flagstar dated April 29, 2011.

{3} The Lichas filed a pro se motion asking the district court to dismiss the complaint on the basis that the complaint had failed to state a claim upon which relief could be granted. The district court summarily denied the motion. Flagstar filed a motion for summary judgment, which it later withdrew to give the Lichas opportunity to answer the complaint. The Lichas then retained counsel, who filed an answer to the complaint on their behalf. The answer asserted, among other things, that Flagstar lacked standing to bring the complaint because it was not "the holder in due course" and because it was "not the contractual party with respect to the transaction."

{4} Flagstar renewed its summary judgment motion, asserting that it was "entitled to enforce the [n]ote and [m]ortgage" because the note and mortgage were "transferred and assigned to [Flagstar]." In support of this assertion, Flagstar referred to a copy of the MERS assignment that it had attached to its complaint and it attached an affidavit of Lisa Jones, an employee of Flagstar. In her affidavit, Ms. Jones stated that "[t]he original [n]ote is maintained in a vault at Flagstar[,]" that "Flagstar's vault document management system" indicates "that Flagstar held possession of the original [n]ote when it commenced the instant foreclosure action," that Flagstar continues to "hold[] possession of the original [n]ote[,]" and that she "reviewed the copy of the [n]ote . . . and ha[s] confirmed that it is a true and correct copy of the

2

original [n]ote that is maintained at Flagstar." Attached to this affidavit were copies of the note containing the indorsement to Flagstar, the mortgage, and the MERS assignment, which appear to be identical to the documents that Flagstar attached to its complaint.

{5} In response to Flagstar's renewed summary judgment motion, the Lichas made four arguments relevant to this appeal. Their first argument concerned Flagstar's standing to foreclose. They argued that there were factual disputes about whether Lending Solutions authorized MERS to assign the mortgage to Flagstar, whether Flagstar gave any consideration for the assignment of the note and mortgage, and whether Flagstar was the current owner of the mortgage. In support of their assertion that Flagstar was not the owner of the mortgage, the Lichas submitted an affidavit of Vanessa DeNiro, an attorney who performed a "loan audit" for the Lichas. Ms. DeNiro stated in her affidavit that, based on her research, Ginnie Mae was the owner of the mortgage loan. Her affidavit also contained numerous legal arguments and conclusions of law.

{6} Second, the Lichas argued that they should have been afforded an opportunity to conduct additional discovery on the issue of whether Flagstar had standing to foreclose. Third, they argued that the district court should sanction Flagstar for "bad faith discovery tactics" because it stated in its responses to the Lichas' interrogatories

that the "subject loan" was "owned by Flagstar" when the "true owner is [Ginnie Mae]." Fourth, they argued that "there was a potential violation of [the] Home Loan Protection Act."

{7}     In its reply, Flagstar moved to strike the DeNiro affidavit because, among other reasons, the affidavit contained statements that were "inadmissible hearsay, violate the best evidence rule[,] or are inadmissible legal conclusions." Flagstar argued that the Lichas did not have standing to challenge the consideration paid for the assignment of the mortgage to Flagstar. Flagstar also attached an affidavit and an exhibit to its reply showing an undated endorsement in blank by Flagstar on the back of the note.

{8}     Without holding a hearing, the district court entered an order granting summary judgment in favor of Flagstar, in which it concluded that Flagstar was entitled to enforce the note and mortgage. In the same order, it struck the DeNiro affidavit and denied the Lichas' request for additional discovery, but it did not discuss the reasons for these decisions. It later denied the Lichas' motion to reconsider.

**B.     Arguments on Appeal**

{9}     All but one of the arguments set forth in the Lichas' brief in chief were preserved in the district court. The unpreserved argument asserts that the Jones affidavit attached to Flagstar's summary judgment motion did not show that Ms.

4

Jones had "personal knowledge" concerning her statement that Flagstar possessed the original note on the date it filed for foreclosure because she relied on Flagstar's computer system for this information. Flagstar correctly counters that the Lichas did not raise this argument in the district court. Thus, we do not address this issue because the Lichas do not argue, and we do not find, that we should apply the public interest exception to the rule that appellate courts do not address unpreserved arguments. *See* Rule 12-216 NMRA; *O'Neel v.USAA Ins. Co.*, 2002-NMCA-028, ¶ 32, 131 N.M. 630, 41 P.3d 356 (declining to consider unpreserved arguments on appeal where there was no basis to apply the general public interest exception).

{10}     The five preserved arguments that the Lichas renew in their brief in chief are whether: (1) There were disputed issues of material fact regarding whether Flagstar was the holder of the note and the mortgage; (2) The Lichas have standing to challenge the validity of the assignment of the note and mortgage; (3) The DeNiro affidavit should not have been stricken; (4) The district court should have allowed the Lichas more time to conduct additional discovery; and (5) The district court should have held a hearing before it decided to strike the DeNiro affidavit, deny the Lichas' request for bad faith discovery sanctions against Flagstar, and grant summary judgment in favor of Flagstar.

{11} The Lichas did not renew various other issues in their brief in chief that they raised in the district court. However, because Flagstar raises two of these additional issues in its answer brief and the Lichas address them in their reply brief, we shall discuss them in this opinion. *See Brashear v. Packers*, 1994-NMSC-108, ¶ 7, 118 N.M. 581, 883 P.2d 1278 ("[I]f an appellee raises an argument not addressed by the appellant in its opening brief, the appellant may reply." (alteration, internal quotation marks, and citation omitted)). These two additional issues are whether MERS was authorized to assign the mortgage to Flagstar and whether the Lichas' contention that the original lender "may have" violated the Home Loan Protection Act precludes summary judgment in favor of Flagstar.

**DISCUSSION**

**A.    Standard of Review**

{12} We review a district court's order granting summary judgment de novo. *Summers v. Ardent Health Servs., L.L.C.*, 2011-NMSC-017, ¶ 10, 150 N.M. 123, 257 P.3d 943. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (internal quotation marks and citation omitted). "On review, we examine the whole record for any evidence that places a genuine issue of material fact in dispute, and we view the

6

facts in a light most favorable to the party opposing the motion and draw all reasonable inferences in support of a trial on the merits[.]" *Handmaker v. Henney*, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992 P.2d 879 (internal quotation marks and citation omitted). The party moving for summary judgment has the burden "to establish that no genuine issue of material fact exists for trial and that the movant is entitled to judgment as a matter of law." *C & H Constr. & Paving Co. v. Citizens Bank*, 1979-NMCA-077, ¶ 9, 93 N.M. 150, 597 P.2d 1190. However, "[t]he party opposing a motion for summary judgment cannot defeat the motion . . . by the bare contention that an issue of fact exists, but must show that evidence is available which would justify a trial of the issue." *Spears v. Canon de Carnue Land Grant*, 1969-NMSC-163, ¶ 12, 80 N.M. 766, 461 P.2d 415; *see Guest v. Berardinelli*, 2008-NMCA-144, ¶ 35, 145 N.M. 186, 195 P.3d 353 ("General assertions of the existence of a triable issue are insufficient to overcome summary judgment on appeal.").

**B.    Standing**

{13}    Standing is a jurisdictional prerequisite that "may not be waived and may be raised at any stage of the proceedings, even sua sponte by the appellate court." *Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 15, 320 P.3d 1 (internal quotation marks and citation omitted). Plaintiffs who bring foreclosure actions must demonstrate that they had the right to enforce the note and mortgage at the time that they filed the

7

foreclosure suit. *Id.* ¶ 17.

## 1.    Right to Enforce the Note

{14}    To establish the right to enforce a negotiable instrument such as a note, a plaintiff must show that it is: (1) the "holder" of the instrument; (2) a "nonholder" who possesses the instrument and has the rights of a holder; or (3) a person who does not possess the instrument, but is nonetheless entitled to enforce it pursuant to certain provisions of the Uniform Commercial Code (UCC). NMSA 1978, § 55-3-301 (1992); *see Romero*, 2014-NMSC-007, ¶ 20. The UCC defines the "holder" of the instrument, in pertinent part, as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" NMSA 1978, § 55-1-201(b)(21)(A) (2005); *see Romero*, 2014-NMSC-007, ¶ 21. A third party who is not the payee of the instrument "must prove both physical possession *and* the right to enforcement through either a proper indorsement or a transfer by negotiation." *Romero*, 2014-NMSC-007, ¶ 21. The UCC recognizes two kinds of indorsements for the purpose of negotiating an instrument: a blank indorsement and a special indorsement. *Id.* ¶¶ 24-25. "A blank indorsement . . . does not identify a person to whom the instrument is payable[,] but instead makes it payable to anyone who holds it as bearer paper." *Id.* ¶ 24 (citing NMSA 1978, § 55-3-205(b) (1992)). "[A] special indorsement 'identifies a person to whom it makes the

8

instrument payable.'" *Romero*, 2014-NMSC-007, ¶ 25 (quoting Section 55-3-205(a)). "When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person." *Romero*, 2014-NMSC-007, ¶ 25 (internal quotation marks and citation omitted).

{15}    In this case, because the payee of the note was Lending Solutions, we must determine whether Flagstar provided sufficient evidence of how it became the holder by either an indorsement or transfer. *See id.* ¶ 21. Because the note that Flagstar attached to its complaint was specially indorsed by Lending Solutions, identifying Flagstar as the person to whom the note was payable, we conclude that Flagstar provided sufficient evidence that it was the holder of the note with the right to enforce it under the UCC. *See id.*; § 55-3-301; § 55-1-201(b)(21)(A); § 55-3-205(a).

{16}    During the summary judgment proceedings, Flagstar submitted a copy of the back page of the note showing that Flagstar had indorsed the note in blank. The Lichas argue that Flagstar's blank indorsement on the back of the note was a "conflicting indorsement[]" that created an issue of fact precluding summary judgment. We disagree. Flagstar's blank indorsement is consistent with Lending Solution's special indorsement to Flagstar. Because Flagstar has shown that it is the holder of the note due to Lending Solutions' special indorsement, the effect of Flagstar's blank indorsement is to allow Flagstar to negotiate, or transfer, the note to

9

another person. *See* NMSA 1978, § 55-3-201(a) (1992) (defining "[n]egotiation" as "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder"); *Casarez v. Garcia*, 1983-NMCA-013, ¶ 16, 99 N.M. 508, 660 P.2d 598 (recognizing that when a note is specially indorsed to a transferee, that transferee may "further negotiate[]" the note "only by his indorsement"). The Lichas have not claimed that there is evidence that Flagstar, after indorsing the note in blank, had transferred the note to another person. Without such evidence, Flagstar's blank indorsement on the note it continues to hold has no effect on the issues we address in this appeal.

**2. Right to Foreclose the Mortgage**

{17}     Our Supreme Court has recently held that where a plaintiff has not established the right to enforce the note, it cannot foreclose the mortgage, even if evidence shows that the mortgage was assigned to the plaintiff. *See Romero*, 2014-NMSC-007, ¶¶ 34-35. In doing so, the Supreme Court included quotations from various authorities recognizing that where the foreclosing plaintiff establishes the right to enforce the note, the plaintiff automatically has the right to foreclose the mortgage that secures the note. *See id.* ¶ 35. Authorities in New Mexico and elsewhere are consistent with this principle. *See, e.g.*, *Simson v. Bilderbeck, Inc.*, 1966-NMSC-170, ¶¶ 13-14, 76 N.M. 667, 417 P.2d 803 (recognizing that "[i]t has frequently been held that a

10

mortgage is but an incident to the debt, the payment of which it secures, and its ownership follows the assignment of the debt" and concluding that the plaintiff, "[h]aving a right . . . to enforce the note, . . . could foreclose the mortgage" (internal quotation marks and citation omitted)); 55 Am. Jur. 2d *Mortgages* § 927 (2009) ("Generally, the transfer or assignment of a negotiable promissory note carries with it, as an incident, a deed of trust or mortgage upon real estate or chattels that secure its payment. The mortgage follows the debt, in the sense that the assignment of the note evidencing the debt automatically carries with it the assignment of the mortgage. . . . An assignment of the obligation operates as an assignment of the mortgage as effectively for all purposes as a formal written assignment. There is no necessity for the granting or recording of a separate mortgage assignment." (footnotes omitted)).

{18} Consistent with these authorities, we clarify that in order to demonstrate standing to bring a mortgage foreclosure action, the plaintiff must establish that it had the right to enforce the note at the time it filed suit and that the note was secured by a mortgage—the plaintiff need not additionally establish that the mortgage was formally assigned because the right to enforce the mortgage automatically follows the right to enforce the note. *See Romero*, 2014-NMSC-007, ¶ 35; *Simson*, 1966-NMSC-170, ¶¶ 13-14; 55 Am. Jur. 2d *Mortgages* § 927. Therefore, the Lichas' challenge to

11

the MERS assignment was not a material issue that precluded summary judgment because, when Flagstar established the right to enforce the note, Flagstar automatically established its right to enforce the mortgage. *See Romero*, 2014-NMSC-007, ¶ 35; *see also Romero v. Philip Morris, Inc.*, 2009-NMCA-022, ¶ 12, 145 N.M. 658, 203 P.3d 873 ("An issue of fact is 'material' if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute."), *rev'd on other grounds by* 2010-NMSC-035, 148 N.M. 713, 242 P.3d 280; *Simson*, 1966-NMSC-170, ¶¶ 13-14; 55 Am. Jur. 2d *Mortgages* § 927.

**3.    Consideration**

{19}    We reject the Lichas' argument that the question of whether Flagstar gave consideration for the note and mortgage was a material issue that precluded summary judgment. The Lichas cite no authority and this Court has found no authority that requires the holder of a note, as the plaintiff in a foreclosure action, to establish that it gave consideration to the original lender for the right to enforce the note and mortgage. Although New Mexico courts have not directly addressed this issue, we agree with the weight of authority that concludes that persons may not raise the defense of lack of consideration where they were not parties to the transfer because such defense is available only to the parties to the transfer. *See* 59 C.J.S. *Mortgages* § 412 (2009) ("An assignment of a mortgage must be supported by a good and

valuable consideration in order to be valid *as between the parties*. However, the want of consideration is not available as a defense to one who was not a party to the assignment and hence was not thereby injured[.]" (emphasis added) (footnotes omitted)); *Reeves v. ReconTrust Co.*, 846 F. Supp. 2d 1149, 1164 (D. Or. 2012) (concluding that the defense of lack of consideration is not available to third-party debtors to void the mortgage assignment to MERS). Therefore, because the Lichas were not parties to the transfer of the note and mortgage from Lending Solutions to Flagstar, we conclude that the Lichas' lack-of-consideration argument does not raise an issue of material fact precluding summary judgment.

**C.     Exclusion of the DeNiro Affidavit**

{20}     We review a district court's decision to strike an affidavit at the summary judgment stage of the proceedings for an abuse of discretion. *See Akins v. United Steelworkers of Am.*, 2009-NMCA-051, ¶ 40, 146 N.M. 237, 208 P.3d 457 ("We review a district court's decision to admit or exclude evidence for abuse of discretion."), *aff'd* 2010-NMSC-031, 148 N.M. 442, 237 P.3d 744; *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 854-55 (10th Cir. 1999) ("Like other evidentiary rulings, we review a district court's decision to exclude evidence at the summary judgment stage for abuse of discretion." (internal quotation marks and citation omitted)). In doing so, we "presume[] that the district court [wa]s correct" and "the

13

burden is on the appellant to clearly demonstrate the district court's error." *Akins*, 2009-NMCA-051, ¶ 40. Affidavits supporting or opposing a summary judgment motion

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Rule 1-056(E) NMRA. At the summary judgment stage, a district court "must consider evidence even if the *form* of the evidence, such as a deposition, would be inadmissible at trial," but "it cannot consider evidence if the *substance* of the evidence is inadmissible at trial." *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 28, 148 N.M. 627, 241 P.3d 628 (first emphasis added). For instance, "hearsay . . . is not generally admissible at trial, so affidavits or depositions containing hearsay are not sufficient evidence of a fact." *Id.* (internal quotation marks and citation omitted). Furthermore, opinions of witnesses concerning questions of law are inadmissible at trial. *See Beal v. S. Union Gas Co.*, 1960-NMSC-019, ¶¶ 29-30, 66 N.M. 424, 349 P.2d 337.

{21} Ms. DeNiro stated in her affidavit that she had performed a "Mortgage Securitization Analysis and Legal Chain of Title Report" based on her research and analysis of "documents[]" and "county records[,]" and her use of "internet tools and

14

commercial and government websites." Her affidavit contained four parts: a "securitization analysis"; a "chain of title report"; a "supplementary legal analysis"; and a conclusion. In her securitization analysis, she stated that her research revealed that "[t]he [m]ortgage associated with [the subject loan] is a mortgage back [sic] security . . . guaranteed by [Ginnie Mae] (Ginnie Mae II RPB Trust/Pool 2009)." (Emphasis omitted.) She did not identify or include copies of any of the documents, county records, or website pages that she relied on in making this determination. She then stated that:

> By [Ginnie Mae] purchasing the said [m]ortgage [l]oan and selling certificates as shares of the [Ginnie Mae] RPB Pool 2009[] to investors based on the placement of the loan, [Ginnie Mae] was exercising rights of ownership over the said [m]ortgage [l]oan[, and b]y exercising such rights of ownership, [Ginnie Mae] made a claim of ownership of the said [m]ortgage [l]oan.

In the chain of title report, Ms. DeNiro stated that she did not find the assignment of the mortgage from MERS to Flagstar in the county records. She then concluded that "[t]here is no legal evidence that Flagstar is the owner of the said [m]ortgage" or "the [n]ote" and that Flagstar was "at most, a mere servicer of the [m]ortgage." The remainder of this part of the affidavit, and the parts identified as supplementary legal analysis and conclusion do not contain facts, but rather legal arguments and legal conclusions.

{22} The Lichas contend that the district court should not have excluded the DeNiro

15

affidavit because it established a genuine issue of material fact as to the ownership of the note and mortgage. We reject this contention.

{23}     Most of the statements that Ms. DeNiro made in her affidavit concerned legal conclusions that would have been inadmissible at trial, and were thus properly excluded. *See Beal*, 1960-NMSC-019, ¶¶ 29-30 (concluding that expert testimony was properly stricken at trial because it is not the function of any witness, expert or non-expert, to state an opinion on a matter of law); *Wilde*, 2010-NMCA-085, ¶ 28 (stating that our Supreme Court has made clear that a court cannot consider evidence at the summary judgment stage "if the *substance* of the evidence is inadmissible at trial"). The only statement in her affidavit concerning a disputed *factual* issue about Flagstar's standing was that "[t]he [m]ortgage associated with [the subject loan] is a mortgage back [sic] security . . . guaranteed by [Ginnie Mae] (Ginnie Mae II RPB Trust/Pool 2009)[,]" which resulted in Ginnie Mae having "rights of ownership [over] the said [m]ortgage [l]oan." (Emphasis omitted.) This statement was properly excluded for two reasons. First, Ms. DeNiro claimed that she relied on "documents[]" and "county records[,]" and her use of "internet tools and commercial and government websites" in making her statements, but none of these sources were identified or attached to the affidavit, in violation of Rule 1-056(E). *See* Rule 1-056(E) ("Sworn or certified copies of all papers or parts thereof referred to in an

affidavit shall be attached thereto or served therewith."); *cf. State v. Lopez*, 2009-NMCA-044, ¶¶ 14, 26, 146 N.M. 98, 206 P.3d 1003 (holding that, pursuant to the best evidence rule, trial testimony relying on documents was inadmissible without submission of such documents or an explanation as to why the documents were unavailable). Second, Ms. DeNiro's statements are vague and only appear to reference the ownership of the mortgage—not the note. Because we have concluded that the right to foreclose the mortgage automatically follows the right to enforce the note, and Flagstar established that it had the right to enforce the note, Ms. DeNiro's statements about ownership of the mortgage were not material to the issue of Flagstar's right to file this foreclosure action. *See Romero*, 2009-NMCA-022, ¶ 12. Therefore, we conclude that the district court did not abuse its discretion in striking the DeNiro affidavit. *See Akins*, 2009-NMCA-051, ¶ 40; *see also Mitchael*, 179 F.3d at 854.

**D.     The Lichas' Request for Further Discovery**

{24}     The Lichas argue that the district court should have granted its request for more time to conduct discovery before it granted Flagstar's summary judgment motion. We disagree.

{25}     "[W]e review a district court's decision limiting discovery solely on the grounds of abuse of discretion." *Sanchez v. Church of Scientology*, 1993-NMSC-034,

¶ 17, 115 N.M. 660, 857 P.2d 771. Generally, "a court should not grant summary judgment before a party has completed discovery." *Sun Country Sav. Bank of N.M., F.S.B. v. McDowell*, 1989-NMSC-043, ¶ 27, 108 N.M. 528, 775 P.2d 730. In determining whether summary judgment was premature based upon discovery issues, we consider the following factors: (1) whether the nonmovant sought a continuance during the summary judgment motion stage to complete its discovery; (2) whether, between the time the summary judgment motion was filed and the grant of summary judgment, the nonmovant had sufficient time to obtain discovery; (3) whether the nonmovant submitted an affidavit in opposition to the summary judgment motion "contain[ing] a statement of the time required to complete the discovery, the particular evidence needed, where the particular evidence was located and the methods used to obtain the evidence[]"; and (4) whether the party who moved for summary judgment "gave an appropriate response to a discovery request from the nonmoving party." *Id.*

{26}    Applying these factors, the record shows that the Lichas propounded interrogatories and requests for production upon Flagstar on September 7, 2012. Flagstar responded to these requests on October 31, 2012 and supplemented its responses on March 6, 2013. The record shows that during the four-month period between the time they received Flagstar's initial responses and the time that Flagstar

18

filed its summary judgment motion, the Lichas made no formal objection to the manner in which Flagstar responded to their requests, nor did they seek additional discovery from Flagstar. Only after Flagstar moved for summary judgment did the Lichas contend in their opposition to the motion that "[f]urther discovery is needed to determine whether MERS had proper authorization to act on behalf of Lending Solutions" when it assigned the mortgage to Flagstar; that Flagstar "continuously refused to provide requested original loan documents or consideration or value given in exchange for the [a]ssignment of [m]ortgage"; that the Lichas needed time to "inspect the . . . loan application and all disclosures made or not made to them" and the "full mortgage file" so that they could "determine whether the loan is void or voidable due to fraud or misrepresentation"; and that Flagstar "has refused to provide true discovery responses" because its statement that "the loan had never been securitized" was "false." The Lichas did not submit an affidavit with their opposition detailing the time required to complete their discovery or the methods needed to obtain the evidence they sought.

{27} During the next three-month interval between the time that Flagstar moved for summary judgment and the district court's order granting it, the Lichas did not propound any further discovery requests upon Flagstar, they did not move to compel Flagstar to produce any documents they claimed that Flagstar improperly withheld,

19

and they did not move for a stay or continuance of the summary judgment proceedings. Furthermore, the Lichas do not dispute Flagstar's claim that it provided them with an "opportunity to inspect the original note but the Lichas failed to do so." For these reasons, we conclude that the Lichas did not act reasonably in pursuing the deficiencies claimed to exist in discovery and the district court did not abuse its discretion in denying the Lichas more time to pursue discovery. *See Sanchez*,1993-NMSC-034, ¶ 17; *Sun Country Sav. Bank of N.M., F.S.B.*, 1989-NMSC-043, ¶ 29 (affirming summary judgment where nonmovant "did not act reasonably in discovering . . . information" because it did not file a motion to compel, did not seek a continuance of the summary judgment proceedings, did not attempt to conduct additional discovery while the summary judgment motion was pending, and did not include an affidavit elaborating on the time and methods needed to complete discovery).

**E.     Home Loan Protection Act**

{28}     Although the Lichas do not raise an issue in their brief in chief concerning the Home Loan Protection Act (HLPA), NMSA 1978, §§ 58-21A-1 to -14 (2003, as amended through 2009), Flagstar argues in its answer brief that it is not subject to the HLPA claims that were made by the Lichas during the summary judgment proceedings. The Lichas counter in their reply brief that Flagstar is subject to the

20

HLPA, that the Lichas "presented a factual dispute as to whether [Flagstar] may have violated the HLPA[,]" and that this factual dispute precluded summary judgment. However, the Lichas do not identify or discuss the nature of the factual dispute they claim exists. Instead, they merely state that more discovery is required to determine whether there was an HLPA violation. Because the Lichas do not identify an actual factual issue with regard to the HLPA in their appellate briefs, and because we have concluded that they did not act reasonably in pursuing discovery prior to the summary judgment ruling, we need not further address the legal question of whether Flagstar violated the HLPA. *See Montgomery*, 2007-NMSC-002, ¶ 16. ("Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." (internal quotation marks and citation omitted)); *Spears*, 1969-NMSC-163, ¶ 12 ("The party opposing a motion for summary judgment cannot defeat the motion . . . by the bare contention that an issue of fact exists, but must show that evidence is available[.]"); *Guest*, 2008-NMCA-144, ¶ 35 ("General assertions of the existence of a triable issue are insufficient to overcome summary judgment on appeal.").

**F.     Hearing**

{29}     Finally, the Lichas claim that the district court erred when it decided the summary judgment motion without a hearing. We reject this contention because we

21

are aware of no authority, and the Lichas have cited none, that requires a district court to hold a hearing on a summary judgment motion. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."), *cert. denied*, 2014-NMCERT-003, 324 P.3d 375. We have previously recognized that "[i]n considering a motion for summary judgment, the [district] court . . . is not required to[] hold an oral hearing. . . . when the opposing party has had an adequate opportunity to respond to [the] movant's arguments through the briefing process." *Nat'l Excess Ins. Co. v. Bingham*, 1987-NMCA-109, ¶ 9, 106 N.M. 325, 742 P.2d 537. The Lichas filed a written response in opposition to Flagstar's summary judgment motion and have not claimed that they did not have an opportunity to respond to Flagstar's arguments during the briefing process. Therefore, we conclude that the district court did not err when it granted summary judgment without a hearing.

{30}	The Lichas also argue that the district court should have held a hearing on their request for discovery sanctions against Flagstar because: statements in the DeNiro affidavit contradicted some of Flagstar's responses to the Lichas' discovery requests; a hearing would have allowed the district court to determine whether Ms. DeNiro's statements were correct and Flagstar's statements were false; and if Flagstar's statements were false, the district court could have granted the Lichas' request for bad

faith discovery sanctions. We reject this argument for three reasons. First, we have already concluded that the statements in the DeNiro affidavit were inadmissible and the district court properly struck them. Second, even if the district court had considered the DeNiro affidavit, the statements in the affidavit that contradict Flagstar's right to foreclose the mortgage fail as a matter of law because Flagstar established it had the right to enforce the note. Third, the Lichas cite no authority, and we have found none, that requires a district court to hold a hearing on an unresolved request for discovery sanctions for the separate purpose of weighing the credibility of individuals who have made conflicting statements during the discovery process. *See Curry*, 2014-NMCA-031, ¶ 28.

**CONCLUSION**

{31}    For the reasons set forth herein, we affirm the district court's order granting summary judgment in favor of Flagstar.

{32}    **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

23

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**


_____

**M. MONICA ZAMORA, Judge**